53
2/20/02

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JERRY MASON,                      :   CIVIL NO. **1:00-CV-1490**
                                  :
            Petitioner            :   (Judge Rambo)
                                  :
            v.                    :   (Magistrate Judge Smyser)
                                  :
ROBERT W. MEYERS,                 :
Superintendent,                   :                **FILED**
                                  :           HARRISBURG, PA
            Respondent            :
                                  :             FEB 2 0 2002
                                  
<u>REPORT AND RECOMMENDATION</u>



MARY E. D'ANDREA, CLERK
Per _____
                Deputy Clerk

        On April 5, 1988, a jury in the Court of Common Pleas of

Luzerne County, Pennsylvania found the petitioner guilty of

kidnaping, rape, two counts of involuntary deviate sexual

intercourse, indecent assault, terroristic threats and unlawful

restraint.  On August 21, 2000, the petitioner, a state

prisoner proceeding *pro se*, filed a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  The petitioner

raises as grounds for habeas corpus relief:  1) that his

request for DNA testing to establish his innocence was not

granted and an eyewitness identification of him was tainted; 2)

that he did not have the effective assistance of counsel; 3)

that there was a conflict of interest on the part of his counsel; and 4) that his counsel failed to conduct an investigation or attack the legal jurisdiction of the trial court.  By an Order dated October 10, 2000, the respondent was ordered to respond to the petition on or before October 30, 2000.

The respondent did not respond to the petition as ordered.  By an Order dated November 9, 2000, the respondent was ordered to show cause within ten days why a default judgment should not be entered and the petition for a writ of habeas corpus granted or other sanctions entered based on respondent's failure to respond to the petition.  On November 14, 2000, the respondent, by the District Attorney of Luzerne County, filed a response to the show cause order and a request for an extension of time to file his response to the petition. By Order of November 22, 2000, the respondent was afforded an extension of time until December 1, 2000 to respond to the petition.

On December 1, 2000, a response was filed to the petition.

On December 13, 2000, the petitioner filed a motion for entry of default and sanctions against the respondent for failing to respond to the petition. The petitioner asserted that he did not receive a copy of the respondent's December 1, 2000 response to the petition. The response to the petition contained an undated certificate of service. The address to which petitioner's copy was sent did not include the petitioner's inmate identification number. Because it was possible that the petitioner had not received the response, the Clerk of Court was directed to send to the petitioner a copy of the response. The petitioner's motion for entry of default and sanctions was denied.

The Order of October 10, 2000, provided that the respondents:

> shall respond to the petition for writ of habeas corpus in the manner required by Rule 5, 28 U.S.C.A. foll. §2254:

AO 72A
(Rev.8/82)

The answer shall respond to the allegations of the petition. In addition it shall state whether the petitioner has exhausted his state remedies including any post-conviction remedies available to him under the statutes or procedural rules of the state and including also his right of appeal both from the judgment of conviction and from any adverse judgment or order in the post-conviction proceeding. The answer shall indicate what transcripts (of pretrial, trial, sentencing, and post-conviction proceedings) are available, when they can be furnished, and also what proceedings have been recorded and not transcribed. There shall be attached to the answer such portions of the transcripts as the answering party deems relevant. The court on its own motion or upon request of the petitioner may order that further portions of the existing transcripts be furnished or that certain portions of the nontranscribed proceedings be transcribed and furnished. If a transcript is neither available nor procurable, a narrative summary of the evidence may be submitted. If the petitioner appealed from the judgment of conviction or from an adverse judgment or order in a post-conviction proceeding, a copy of the petitioner's brief on appeal and of the opinion of the appellate court, if any, shall also be filed by the respondent with the answer.

4

The December 1, 2000 response to the petition did not state the respondent's position on whether or not the petitioner has exhausted state remedies.  The respondent was ordered to file a supplemental response stating the position of the Commonwealth on the question of whether the petitioner has exhausted state remedies and the Commonwealth's position on the petitioner's assertion that exhaustion of state remedies should be excused because of inordinate delay in the state court.  The respondent was directed to attach to the supplemental response copies of all motions, briefs and orders filed in the state courts concerning the petitioner's direct appeal of his conviction and his petition for post-conviction collateral relief.

On January 8, 2001, a supplemental response to the petition was filed.  The response did not provide to the court as directed copies of all motions, briefs and orders filed in the state courts concerning the petitioner's direct appeal of his conviction and his petition for post-conviction collateral relief.  By an Order dated January 24, 2001, we again ordered

AO 72A
(Rev.8/82)

that the respondent provide copies to the court of all motions, briefs and orders filed in the state courts concerning the petitioner's direct appeal of his conviction and his petition for post-conviction collateral relief, so that we could make a determination concerning the exhaustion issues.

On February 8, 2001, the respondent filed documents in response to the Order of January 24, 2001.  On February 22, 2001, the petitioner filed a request for the court to order the production of additional documents.

The respondent contended that the petition should be dismissed because the petitioner has not exhausted state remedies.

A state prisoner must exhaust available state remedies before filing a petition for habeas corpus in federal court. 28 U.S.C. §2254(b) and (c).  This requirement serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any

AO 72A
(Rev.8/82)

violations of a prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)( "Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").

A habeas corpus petitioner bears the burden of demonstrating that he has exhausted state remedies. *O'Halloran v Ryan*, 835 F.2d 506, 508 (3d Cir. 1987). In order to exhaust state remedies for federal habeas corpus purposes, a petitioner must show that he has fairly presented his claim to the state courts. *Picard v. Connor*, 404 U.S. 270, 278 (1971). To be fairly presented to the state courts both the legal theory and the facts supporting the claim must have been presented to the state courts. *O'Halloran*, *supra*, 835 F.2d at 508. Further, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan, supra*, 526 U.S. at 845.

7

The petitioner contended that he should be excused from exhausting state remedies because of inordinate delay in the state court.  More specifically, the petitioner claimed that he filed a petition for Post Conviction Collateral Relief in the Court of Common Pleas in 1992, that the court held a hearing on that petition on August 11, 1993 but that the court has not ruled on his petition.

The respondent's stated the following with respect to the petitioner's petition for Post Conviction Collateral Relief:

> 6.  On March 24, 1992, Petitioner filed a petition for Post-Conviction Collateral Relief in the Court of Common Pleas of Luzerne County.  The Court appointed counsel for Petitioner, and scheduled a hearing for June 17, 1993.
> 7. Defense counsel subsequently filed a Motion for Continuance, on the grounds that he had been unable to locate Petitioner, and the Petitioner had requested counsel to withdraw the Petition for Post-Conviction Collateral Relief.  The Court granted this Motion by Order dated June 15, 1993.
> 8.  No further action has been taken on Petitioner's Petition for Post-Conviction Collateral Relief.

(Doc. 15 at ¶6-8).

8

These statements by the respondent may reasonably lead to an inference that the reason the state court has not ruled on the petitioner's Post Conviction Collateral Relief Petition is because the petitioner's counsel requested that the petition be indefinitely continued or even dismissed. However, despite being ordered to file all motions, briefs and orders filed in the state courts concerning the petitioner's direct appeal of his conviction and his petition for post-conviction collateral relief, the respondent has failed to produce the alleged motion for continuance or the alleged Order of June 15, 1993. Rather, the documents that the respondent has produced indicate that a hearing was held on the petitioner's Post Conviction Collateral Relief petition on August 11, 1993.

Given that there has been no apparent action by the Court of Common Pleas on the petitioner's Post Conviction Collateral Relief petition since the hearing on August 11, 1993, this court should deem that there has been inordinate delay in the state proceeding and that the petitioner is excused from exhausting state remedies with regard to the issues that he raised in his Post Conviction Collateral Relief Petition.

9

*Hankins v. Fulcomer*, 941 F.2d 246, 250 (3d Cir. 1991)
(inordinate delay in the state courts may excuse the exhaustion
requirement).

By an Order dated March 12, 2001, we appointed counsel to
represent the petitioner.  The petitioner, through counsel, was
ordered to file, within thirty days, a brief addressing the
merits of his claims.  The respondent was ordered to file a
brief in opposition with fifteen days after the petitioner's
brief is filed, and the petitioner was permitted ten days after
the respondent's brief is filed to file a reply.  We directed
that the petitioner's brief shall address, *inter alia,* whether
the petitioner is requesting a hearing and whether pursuant to
28 U.S.C. § 2254(e)(2) he is entitled to such a hearing.

The Order of March 12, 2001 also denied the petitioner's
motion for court ordered documents without prejudice to such a
motion being filed by counsel.

On May 4, 2001, the petitioner filed a motion for
discovery seeking an order requiring the District Attorney of

10

Luzerne County to produce for DNA testing an undergarment worn by the victim which had tested positive for the presence of human sperm.  The petitioner contended that he is actually innocent, that he was mistakenly identified by the victim, that his trial counsel was ineffective for failing to conduct DNA testing and that a DNA test would exclude him as the source of the sperm.  The respondent did not oppose the petitioner's motion for discovery.  By an Order dated June 4, 2001, the District Attorney for Luzerne County was ordered to produce, on of before June 18, 2001, the exhibit in question for DNA testing by the defense.

After receiving a number of extensions of time, the petitioner filed a brief in support of his petition for a writ of habeas corpus.  The petitioner did not brief his claim that his trial counsel was ineffective for failing to conduct DNA testing.  The petitioner's brief addresses his other claims.  On August 22, 2001, the respondents filed a brief in opposition to the petition.

11

On August 7, 2001, the petitioner filed a motion to conduct depositions.  In this motion, the petitioner contended that the District Attorney had not produced the exhibit in question and that the Assistant District Attorney informed defense counsel that he has been unable to locate the exhibit. The petitioner sought to conduct depositions to ascertain the whereabouts of the exhibit.  The respondent did not file a brief in opposition to the motion for depositions.  By an Order filed on October 1, 2001 the petitioner's unopposed motion to conduct depositions was granted and the petitioner was permitted to conduct reasonable depositions in an attempt to locate the exhibit in question.

By a Report filed on November 15, 2001, the petitioner informed the court that the undergarment in question had been found and shipped to a laboratory for testing.

By an Order dated January 8, 2002, the petitioner was ordered to file, on or before January 28, 2002, a status report informing the court of the status of the DNA testing being

AO 72A
(Rev.8/82)

conducted in this case.  On January 28, 2002, the petitioner
filed a status report indicating that the investigator for the
petitioner's counsel called the laboratory doing the DNA
testing and was informed that the laboratory had finished their
presumptive testing, that no semen had been detected on the
garment and that a written report would be mailed in about one
week.

     By an Order dated February 4, 2002 the petitioner was
ordered to file another status report informing the court
whether any further DNA tests beyond the presumptive testing
mentioned in the petitioner's January 28, 2002 status report
will be conducted and, if so, the status of such testing.  By a
report filed on February 7, 2002 the petitioner informed the
court that no further DNA testing will be conducted.

     We will now address the four claims briefed by the
petitioner. The petitioner's claims concern his right to the
effective assistance of counsel.

13

A claim of ineffective assistance of counsel requires a two part analysis.  First, the petitioner must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  There is a strong presumption that counsel's conduct falls within the range of reasonable professional assistance. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986).  Counsel's performance should be viewed from counsel's perspective at the time without the distorting effects of hindsight. *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001).  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  To establish prejudice the petitioner must show that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Strickland*, *supra*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  "It is only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *George v. Sively,* 254 F.3d 438, 443 (3d Cir.

14

2001)(quoting *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989)).

The petitioner's first claim is that his trial counsel was ineffective for failing to investigate the facts and circumstances surrounding the in-court identification of the petitioner by the victim.   The petitioner has submitted a declaration from Richard S. Garvey, an investigator for the Federal Public Defender's Office. *Doc. 43, Exhibit B.*  Garvey states that on May 14, 2001, he spoke by telephone to Mark Metzo. *Id.* at ¶3.  Mr. Metzo indicated to Garvey that in 1987 he was employed as a part-time police officer for the White Haven Police Department, that he was present at the White Haven Police Department on the night that Officer Robert Searfoss received a phone call from the victim reporting the assault in this case and that he overheard Officer Searfoss's end of the conversation. *Id.* at ¶¶7-9.  Mr. Metzo further stated that he heard Officer Searfoss tell the victim: "that sounds like Jerry Mason." *Id.* at ¶10.

15

The petitioner claims that trial counsel did not exercise the diligence necessary to discover this evidence and that no reasonable fact finder would have found the petitioner guilty in the face of this evidence.

Whether the statement "that sounds like Jerry Mason" allegedly made by Officer Searfoss to the victim tainted the victim's in-court identification of the petitioner to such as degree as to render her in-court identification unreliable depends upon a number of factors including the opportunity of the victim to view her assailant at the time of the crime, the victim's degree of attention, the accuracy of her prior description of her assailant, the level of certainty of her identification of the petitioner and the time between the crime and her identification of the petitioner. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)(setting forth factors to be considered in determining the reliability and admissibility of identification testimony). Another factor that is relevant in the instant case is whether prior to trial the victim identified the petitioner without reference to his name, for

16

example through a photographic array or a line up.  The

petitioner has not presented any evidence regarding any of the

above factors.  Thus, we conclude that the petitioner has not

established that he was prejudiced by trial counsel's alleged

failure to investigate the facts and circumstances surrounding

the in-court identification of the petitioner by the victim.


The petitioner requests an evidentiary hearing to

establish this claim.


28 U.S.C. 2254(e)(2) provides:

     (2) If the applicant has failed to develop the
factual basis of a claim in State court
proceedings, the court shall not hold an
evidentiary hearing on the claim unless the
applicant shows that -
     (A) the claims relies on -
     (i) a new rule of constitutional law, made
retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable; or
     (ii) a factual predicate that could not have
been previously discovered through the exercise of
due diligence; and
     (B) the facts underlying the claim would be
sufficient to establish by clear and convincing
evidence that but for the constitutional error, no
reasonable factfinder would have found the
applicant guilty of the underlying offense.

17

The state court held an evidentiary hearing on the petitioner's post conviction collateral relief petition at which hearing the petitioner was given the opportunity to develop the factual basis for his ineffective assistance of counsel claims. The petitioner did not develop any factual basis for his claim that his trial counsel was ineffective for failing to investigate the circumstances of the victim's in court identification. The petitioner's claim does not rely on a new rule of constitutional law and the petitioner has not presented any reason why this evidence could not have been previously discovered through the exercise of due diligence. Accordingly, the petitioner is not entitled to an evidentiary hearing in this court.

The petitioner's second claim is that his trial counsel was ineffective in failing to investigate the existence of an alibi witness.

18

At the state court evidentiary hearing, the petitioner testified that he informed his trial counsel of the existence of an alibi witness, Timmy Reilly. *Doc. 43, Exhibit A* at 7. The petitioner's trial counsel, Thomas Marsilio, also testified at the state court evidentiary hearing.  Marsilio testified that he filed a notice of alibi defense listing Reilly and another individual as alibi witnesses. *Id.* at 25 & 28.  He further testified that he was unable to contact Reilly, but he spoke to Reilly's mother and based on his conversation with Reilly's mother he determined that Reilly would not be of assistance to the defense. *Id.* at 26 & 29.

Given Mr. Marsilio's testimony that he made a decision that Reilly's testimony would not be helpful to the defense, the petitioner has not overcome the presumption that counsel's failure to secure Reilly's appearance at trial was reasonable trial strategy. *See Strickland, supra*, 466 U.S. at 689. Moreover, the petitioner has not established what Reilly would have testified to had he been called as a witness at trial, and thus, the petitioner has failed to establish that he was

19

prejudiced by his trial counsel's failure to call Reilly as a witness at trial.

The petitioner's third claim is that his trial counsel was ineffective by failing to conduct an investigation regarding the exact location of the assault.  The petitioner contends that had such an investigation occurred it could have proven that the crime occurred outside of Luzerne County and, therefore, the trial court was without jurisdiction.  Although the petitioner asserts that an investigation could have proven that the crime occurred outside of Luzerne County, he has not presented any evidence that an investigation would have proven that the crime occurred outside of Luzerne County. Accordingly, the petitioner has not established that he was prejudiced by his trial counsel's failure to conduct an investigation into the location of the crime scene.

The petitioner's fourth claim is that his post-trial counsel labored under an actual conflict of interest.

"In order to demonstrate a violation of his Sixth Amendment rights, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

The testimony at the state post-conviction hearing establishes that Virginia Murtha-Cowley represented the Commonwealth at the petitioner's preliminary hearing, that Murtha-Cowley subsequently left the district attorney's office and took a job with the public defender's office and that thereafter she was assigned to represent the petitioner. *Doc. 43, Exhibit A* at 10.  Thomas Marsilio testified that he represented the petitioner from the time of the preliminary hearing through the filing of the post-trial motions. *Id.* at 25.  Virginia Murtha-Cowley testified that she drafted the brief in support of the petitioner's post-trial motions. *Id.* at 36.  After Murtha-Cowley commenced representing the petitioner, the petitioner brought the issue of a possible conflict to the attention of the trial court, the trial court appointed conflict counsel to represent the petitioner and from that

21

point Murtha-Cowley had no further contact with the instant
case. *Id.* at 38.   Murtha-Cowley testified that her work in the
District Attorney's office did not in any way adversely affect
her representation of the petitioner. *Id.* at 37.

In the instant case, the petitioner has not shown that
there was an actual conflict of interest at the time Murtha-
Cowley prepared the brief in support of the petitioner's post-
trial motions. *See Cuyler, supra,* 446 U.S. at 350 ("[U]ntil a
defendant shows that his counsel actively represented
conflicting interests, he has not established the
constitutional predicate for his claim of ineffective
assistance.").   Moreover, even if we assume there was an actual
conflict of interest, the petitioner has not shown that such a
conflict affected Murtha-Cowley's performance during the short
time that she represented the petitioner.   Additionally, any
conflict of interest was remedied by the trial court's
appointment of conflict counsel.

Based on the foregoing, it is recommended that the petition for a writ of habeas corpus be denied and that the case file be closed.

J. Andrew Smyser
Magistrate Judge

Dated: February _20_, 2002.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JERRY MASON,                    :    CIVIL NO. **1:00-CV-1490**
                                :
              Petitioner        :    (Judge Rambo)
                                :
              v.                :    (Magistrate Judge Smyser)
                                :
ROBERT W. MEYERS,               :
Superintendent,                 :
                                :              **FILED**
              Respondent        :         HARRISBURG, PA
                                           FEB 2 0 2002

                     <u>**NOTICE**</u>      MARY E. D'ANDREA, CLERK
                                           Per _____
                                                    Deputy Clerk

        Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3 of the Rules of Court, M.D.Pa., which provides:

        Any party may object to a magistrate judge's proposed findings, recommendations
        or report addressing a motion or matter described in 28 U.S.C. §636(b)(1)(B) or
        making a recommendation for the disposition of a prisoner case or a habeas corpus
        petition **within ten (10) days** after being served with a copy thereof. Such party
        shall file with the clerk of court, and serve on the magistrate judge and all parties,
        written objections which shall specifically identify the portions of the proposed
        findings, recommendations or report to which objection is made and the basis for
        such objections. The briefing requirements set forth in Local Rule 72.2 shall
        apply. A judge shall make a <u>de novo</u> determination of those portions of the report
        or specified proposed findings or recommendations to which objection is made and
        may accept, reject, or modify, in whole or in part, the findings or recommendations
        made by the magistrate judge. The judge, however, need conduct a new hearing
        only in his or her discretion or where required by law, and may consider the record
        developed before the magistrate judge, making his or her own determination on the
        basis of that record. The judge may also receive further evidence, recall witnesses
        or recommit the matter to the magistrate judge with instructions.

                                         _____
                                         J. Andrew Smyser
                                         Magistrate Judge

Dated: February 20, 2002.